UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH KOKOL,

        Plaintiff,

v.

HUBBELL POWER SYSTEMS, INC., d/b/a ACLARA, a foreign for profit corporation,

        Defendant.

C24-0822 TSZ

ORDER

THIS MATTER comes before the Court on Defendant Aclara's[1] Motion to Change Venue, docket no. 15. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

This matter relates to events that occurred in Washington and Texas. In 2015, Defendant Aclara bought out Plaintiff's employer, "SGS," and Plaintiff was transferred

---

[1] Aclara contends that Plaintiff has incorrectly identified Hubbell Power Systems, Inc. ("Hubbell") as the defendant because Plaintiff was employed by Aclara, a separate legal entity from Hubbell. Motion at 1 n.1 (docket no. 15). Plaintiff's paystubs attached to his declaration that list "Aclara Smart Grid Solutions" as his employer appear to support Aclara's claim. See Ex. 1 to Decl. of Joseph Kokol (docket no. 22 at 5–24). The Court makes no ruling concerning whether the proper defendant is Hubbell or Aclara or both.

ORDER - 1

to Aclara as a project manager. Ex. 1 to Notice of Removal ("Complaint") (docket no. 1-1 at ¶ 2.4). In 2018, Aclara was acquired by Hubbell. Id. at ¶ 2.5. By July 2018, Plaintiff moved to Shelton, Washington and worked as a project manager for Hubbell. Decl. of Joseph Kokol at ¶ 4–5 (docket no. 22). About six months later, Plaintiff was promoted to senior operations manager and in that role, Plaintiff actively managed projects across the United States. Compl. at ¶ 2.9 (docket no. 1-1); Kokol Decl. at ¶ 8 (docket no. 22).

Plaintiff worked on a project located in Austin, Texas ("Austin Project") and spent "a significant amount of time at the site" for much of the last year of his employment. Kokol Decl. at ¶ 11 (docket no. 22); Decl. of Allison Ryder at ¶ 5 (docket no. 16). The Austin Project was staffed by approximately 5 supervisors and 50–55 field technicians. Ryder Decl. at ¶ 6 (docket no. 16). Shawn Montgomery worked on the Austin Project as a field supervisor and reported to Cameron Caruthers, a project manager. Id. at ¶ 7; Compl. at ¶¶ 2.10, 2.40 (docket no. 1-1). Caruthers reported to Plaintiff. Ryder Decl. at ¶ 7 (docket no. 16); Compl. at ¶ 2.10 (docket no. 1-1). The four supervisors working alongside Montgomery on the Austin Project all resided in Texas during the relevant time. Ryder Decl. at ¶ 10 (docket no. 16). Three continue to reside in Texas while the fourth's address is unknown. Id.[2]

Montgomery disclosed his personal struggles with alcoholism to Plaintiff. Compl. at ¶ 2.11 (docket no. 1-1). Montgomery informed Plaintiff and later Caruthers that some

---

[2] The fourth supervisor, Christopher Lemming, was terminated in 2023. See Ryder Decl. at ¶ 10 (docket no. 16).

ORDER - 2

1  coworkers at the Austin Project site made comments about Montgomery that were

2  upsetting.  Id. at ¶ 2.27, ¶ 2.40.  Following these conversations, Montgomery filed a

3  claim against the other supervisors who made the comments at the Austin Project site.

4  See id. at ¶ 2.41.

5      HR representative Lahanah Bowman-Sheltz interviewed Montgomery, Caruthers,

6  and Plaintiff as part of a compliance investigation.  Id. at ¶ 2.42.  Defendant found that

7  Plaintiff's knowledge of Montgomery's medical condition and disability and failure to

8  share that knowledge with HR violated company policy.  Id. at ¶ 2.47.  HR Manager

9  Allison Ryder sent Plaintiff a termination letter for failure to comply with the company's

10 policies for reporting harassment.  Id. at ¶ 2.51; see Decl. of Patrick Reddy at p. 4 (docket

11 no. 21).  The following day (on or about September 1, 2023), Plaintiff's employment was

12 terminated.  Compl. at ¶ 2.52 (docket no. 1-1).  Defendant also terminated two other

13 employees, Lee Jamerson and Christopher Lemmings, following its investigation into

14 Montgomery's complaint.  Ryder Decl. at ¶ 11 (docket no. 16).

15     Plaintiff claims his termination was "a form of retaliation for being a witness to

16 disability discrimination in the workplace."  Compl. at ¶ 2.52 (docket no. 1-1).  Plaintiff

17 also claims, "Defendant retaliated against the Plaintiff for having a disability, for filing a

18 workers' compensation claim of disability, and for requesting a reasonable

19 accommodation."  Id. at ¶ 3.9.  Plaintiff asserts two causes of action: (1) "discrimination

20 and retaliation under RCW 49.60.220," and (2) "retaliation under RCW 49.60.030(3)."[3]

21

---

22 [3] RCW 49.60.220 provides that "[i]t is an unfair practice for any person to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from

23

ORDER - 3

1  See id. at pp. 8–9.  Plaintiff filed his complaint in King County Superior Court, and

2  Defendant subsequently removed the case to this Court.  See Notice of Removal (docket

3  no. 1); Compl. (docket no. 1-1).  Defendant's Motion to Change Venue, docket no. 15,

4  seeks to move this case to the Western District of Texas.  The Court entered a Minute

5  Order that stayed the case pending the Court's ruling on this motion.  Minute Order

6  (docket no. 19).

7  **Discussion**

8  **A.    Standard**

9        The Court has broad discretion to transfer cases in the interest of justice.  28

10 U.S.C. § 1404(a); Starbucks Corp. v. Wellshire Farms, Inc., 2013 WL 6729606, at *2

11 (W.D. Wash. Dec. 18, 2013).  The Court must make two findings before granting

12 transfer: (1) the transferee court must be one where the action "might have been

13 brought", and (2) the convenience of the parties and witnesses and the interest of justice

14 favors transfer.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

15 **B.    Plaintiff could have brought this action in the Western District of Texas**

16       This action could have been brought in the Western District of Texas.  Defendant

17 is subject to personal jurisdiction in that district under 28 U.S.C. § 1391(b)(2).

18 **C.    Convenience and Fairness**

19       Under 28 U.S.C. § 1404(a), the district court has "discretion to adjudicate motions

20 for transfer according to an individualized, case-by-case consideration of convenience

21

22

23 complying with the provisions of this chapter or any order issued thereunder." RCW 49.60.040(3) provides that "'Commission' means the Washington state human rights commission."

ORDER - 4

and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  The Jones court has outlined the following factors for the court to weigh in its determination of whether transfer is appropriate in a particular case:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Id. at 498–99.  Additionally, the relevant public policy of the forum state is a significant factor in a § 1404(a) analysis.  Id. at 499.  The court should look to any factors that are relevant, giving appropriate weight to each, and "consider them together in arriving at a balanced conclusion."  Lueck v. Sundstrand Corp., 236 F.3d 1137, 1145–46 (9th Cir. 2001).  As the party seeking to transfer this case, Defendant bears the burden to show that the Western District of Texas is the more appropriate forum.  See Jones, 211 F.3d at 499.

**1.    The location where the relevant agreements were negotiated and executed**

This factor typically turns on where an employment agreement was negotiated and executed.  The parties disagree as to which employment agreement is relevant here.

Defendant hired Plaintiff in February 2018.  Supp. Decl. of Allison Ryder at ¶ 3 (docket no. 25); Compl. at ¶ 2.5 (docket no. 1-1).  Plaintiff completed his relocation to Shelton, Washington by July 2018.  Kokol Decl. at ¶ 5 (docket no. 22).  About six months after moving to Washington, Defendant promoted Plaintiff to senior operations manager.  Id. at ¶ 8.  Although it is not clear if Defendant signed a new employment

ORDER - 5

contract at that time, it was in this role that Plaintiff became responsible for overseeing Defendant's projects nationwide. Id. at ⁋ 9.

Therefore, this factor is neutral.

### 2. The state that is most familiar with the governing law

Plaintiff has filed two claims under the Washington Law Against Discrimination ("WLAD"), RCW Chapter 49.60. Federal courts are equally equipped to apply distant state laws when the law is not complex or unsettled. T-Mobile USA, Inc. v. Selective Ins. Co. of Am., 2016 WL 1464468, at *4 (W.D. Wash. Apr. 14, 2016) (collecting cases). Neither party has asserted that the relevant law under the WLAD is complex or unsettled. Accordingly, both this Court and a court in the Western District of Texas are equally equipped to handle the case, and this factor is neutral.

### 3. The plaintiff's choice of forum

Under § 1404(a), "great weight is generally accorded plaintiff's choice of forum." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). It is for this reason that a defendant seeking a change of venue pursuant to § 1404(a) must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). But courts generally afford less deference to a plaintiff's choice of forum "[w]here the action has little connection with the chosen forum." Amazon v. Cendant Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005); Hong v. Recreational Equipment, Inc., 2019 WL 5536406, at *4 (W.D. Wash. Oct. 25, 2019) ("This factor is generally given significant weight when the plaintiff resides in the chosen forum . . . deference is diminished when a plaintiff does not reside in the forum or operative events occurred elsewhere.").

ORDER - 6

The only connections between this lawsuit and the Western District of Washington are that Plaintiff resides in Shelton, Washington, and Plaintiff worked on a project for Defendant in Western Washington that is unrelated to the circumstances of this action. However, Plaintiff never maintained a residence in Texas. Kokol Decl. at ¶ 12 (docket no. 22). Rather, he stayed in hotels and returned to Washington when not onsite in Austin. Id. During that time Plaintiff also was responsible for projects in Washington, California, and Virginia. Id. at ¶ 13.

This factor favors Plaintiff's choice of forum and weighs against transfer.

**4.    The respective parties' contacts with the forum**

The parties have significant contacts to the Western District of Washington. The Plaintiff and his family have lived in Shelton, Washington since 2018. Kokol Decl. at ¶ 5 (docket no. 22). Plaintiff worked as a project manager on Defendant's project with Puget Sound Energy in Washington. Id. at ¶ 4, 15. Defendant claims that project has since been completed. See Reply at 4 (docket no. 23).

The parties' contacts with the Western District of Texas, on the other hand, are not as aligned. Defendant continues to employ dozens of employees at the Austin Project. Nothing in the record supports an argument that Plaintiff continues to maintain connections or ties to Texas. The only reason he traveled to Texas was to work on the Austin Project.

This factor weighs against transfer.

ORDER - 7

**5.     The contacts relating to the plaintiff's cause of action in the chosen forum**

Plaintiff "reasonably expects" to call the following witnesses: (1) Sunny Kokol, Plaintiff's wife and Washington resident, to testify about the effects Defendant's allegedly retaliatory actions have had on his personal life, (2) an unnamed and as of yet unretained economist to provide expert testimony as to the scope and extent of Plaintiff's monetary damages, and (3) possibly at least one or more of the employees whose work Plaintiff oversaw at a project located in Western Washington.  Decl. of Patrick Reddy at ¶¶ 4–6 (docket no. 21).  The witnesses who have knowledge of the circumstances of this lawsuit, according to those identified in Plaintiff's complaint and his Rule 26(a) disclosures, reside outside of Washington.  Ex. 1 to Decl. of Michael Griffin (docket no. 24-1 at pp. 1–3); see Supp. Ryder Decl. at ¶ 4 (docket no. 25).

Accordingly, this factor weighs in favor of a transfer to the Western District of Texas.

**6.     The differences in the costs of litigation in the two forums**

When comparing the costs of litigation in various forums, courts are reluctant to transfer venue when "transfer would merely shift rather than eliminate" costs and inconvenience.  Decker Coal, 805 F.2d at 843.  "The relative cost analysis focuses primarily on the venue's proximity to witnesses."  Inlandboatmen's Union of the Pac. v. Foss Mar. Co., 2015 WL 64933, at *4 (W.D. Wash. Jan. 5, 2015).  The Court may also consider the parties' respective abilities to absorb the costs of litigation in either district as a relevant consideration.  Starbucks Corp., 2013 WL 6729606, at *4.

ORDER - 8

Plaintiff admits there are "likely several witnesses in Texas whose testimony may be relevant to these proceedings." Response Br. at 14 (docket no. 20). Defendant's Rule 26(a) initial disclosures list eight potential witnesses, which includes Plaintiff, one former employee, and six current employees. Ex. 2 to Griffin Decl. (docket no. 24-2 at pp. 1–5). Defendant admits that several potential witnesses never resided in Texas or no longer reside in Texas and will have to travel regardless of the forum. Ryder Decl. at ¶¶ 6, 10, 11 (docket no. 16). Plaintiff's Rule 26(a) initial disclosures also list eight potential witnesses, which includes Plaintiff and seven of Defendant's employees. Ex. 1 to Griffin Decl. (docket no. 24-1 at 1–4). But as a corporation with business nationwide, Defendant is in a better position to bear the costs of litigation in this district as compared to Plaintiff's ability to litigate in Texas. Requiring Plaintiff to travel to the Western District of Texas for trial would essentially shift the added expense to him.

Accordingly, this factor weighs against transfer.

**7.    The availability of compulsory process to compel attendance of unwilling non-party witnesses**

Convenience of witnesses is often the most important factor in a § 1404(a) transfer motion. Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007). To sufficiently demonstrate inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance. Id. A court's focus should not rest on the number of witnesses or quantity of evidence in each locale. Lueck, 236 F.3d at 1146. Rather, a court should evaluate "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." Id. (quoting Gates

ORDER - 9

Learjet Corp. v. Jensen, 743 F.2d 1325, 1335–36 (9th Cir. 1984)).  The subpoena power for nonparty witnesses is limited to anywhere within the district and one hundred miles of the place of trial.  See Fed. R. Civ. P. 45(c).  Witnesses who are current employees of a defendant are party witnesses, and their convenience is entitled to less weight because the defendant can compel their testimony at trial.  Hoyt v. Liberty Mut. Grp. Inc., 2021 WL 966018, at *5 (E.D. Wash. Mar. 15, 2021); Garlough v. Trader Joe's Co., 2015 WL 4638340, at *4 (N.D. Cal. Aug. 4, 2015).

  Ryder signed a declaration stating she reviewed company records relating to six employees identified as potential witnesses by at least one of the parties.  Supp. Ryder Decl. at ¶ 4 (docket no. 25). Those records showed that the six employees identified states other than Washington as their states of residence.  Id.  Other than Montgomery and Caruthers, Ryder does not claim that the employees reside in Texas.  If the remaining employees reside outside Washington and Texas, they will have to travel to either the Western District of Washington or Western District of Texas for proceedings.  The two former employees Defendant terminated following its investigation into Montgomery's complaint are unlikely to be compelled to come to Washington, but their testimony would speak only to the circumstances of the investigation that led to their termination.  That testimony would not be material to Plaintiff's WLAD claims against Defendant.  Defendant will be able to require its employees to travel to Washington if necessary.  The parties have not identified any other potential unwilling non-party witnesses.

  Accordingly, this factor is neutral.

**8.     The ease of access to sources of proof**

Defendant claims the "preponderance of the relevant records" as to the underlying allegations are in Texas, not the Western District of Washington, and some weight should be given to the fact that certain hard copy documents related to this matter are from Texas despite the ability to exchange records electronically.  Motion at 7 (docket no. 15); Reply Br. at 5–6 (docket no. 23).  "In this age of electronically stored documents, the location of [relevant] documents is of little concern.  Electronic documents may be easily transported."  Johnson v. Russell Invs. Tr. Co., 2022 WL 782425, at *3 (W.D. Wash. Mar. 15, 2022).

This factor is neutral.

**9.     Public Policy**

The parties disagree as to which state has the predominant interest in this case.  Plaintiff contends Washington has a strong public policy interest in this case because he has been a Washington employee for all relevant periods of time and his claims are brought under the WLAD.  Defendant claims that because Plaintiff's claim arose from his time working on the Austin Project, Texas is where his claim arose and has the predominant interest in this case.

Public policy factors include the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose."  Decker Coal, 805 F.2d at 843 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).  Forum states have an interest in providing redress for their injured residents. T-Mobile USA, Inc., 2016 WL 1464468, at *8.

|   |   |
|---|---|
| 1 | Both states have an interest in this case.  Plaintiff has been a Washington resident |
| 2 | since June 2018, and Washington maintains an interest in providing redress for its injured |
| 3 | residents under its discrimination laws.  Texas also has an interest in this case, because |
| 4 | Plaintiff's claims arose from Defendant's alleged misconduct during Plaintiff's work on |
| 5 | the Austin Project. |
| 6 | This factor is neutral. |
| 7 | **10.    Forum Selection Clause** |
| 8 | The record contains no evidence of the presence or absence of a forum selection |
| 9 | clause in Plaintiff's employment contract with Defendant.  Accordingly, this factor is |
| 10 | inapplicable. |
| 11 | **11.    Balancing the Jones factors** |
| 12 | After reviewing the Jones factors, the Court concludes that transferring this case to |
| 13 | the Western District of Texas is not in the interest of justice.  Defendant has not satisfied |
| 14 | its burden.  Critically, of the eight potential witnesses Defendant itself named in its initial |
| 15 | disclosures, Defendant has failed to identify who of its own employees actually reside in |
| 16 | Texas, other than Caruthers and Montgomery.  Most of Defendant's employees still |
| 17 | working at the Austin Project worksite do not appear to be able to testify about |
| 18 | information material to Plaintiff's claims.  Any inconvenience to the parties and |
| 19 | witnesses is not significant enough to warrant a transfer to the Western District of Texas. |
| 20 | **Conclusion** |
| 21 | For the foregoing reasons, the Court ORDERS: |
| 22 | (1)    Defendant's Motion to Change Venue, docket no. 15, is DENIED.  The |
| 23 | stay in this case is LIFTED, and this case is returned to the Court's active docket. |

ORDER - 12

(2) The parties are ORDERED to file a Joint Status Report within 30 days of this Order, informing the Court of a new proposed trial date and related deadlines as was done in the parties' Joint Status Report filed on August 12, 2024. See Joint Status Report and Discovery Plan (docket no. 13).

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 14th day of January, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 13